IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE DERRICK BOND, <br><br> Plaintiff, <br><br> v. <br><br> DAVID HORNE, et al, <br><br> Defendants. | ) Civil Action No. 2: 11-cv-1342 <br> ) <br> ) United States District Judge <br> ) David Stewart Cercone <br> ) <br> ) United States Magistrate Judge <br> ) Cynthia Reed Eddy <br> ) |

# REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted and Plaintiff's Partial Motion for Summary Judgment be denied.

**II.  REPORT**

    **A.  Procedural Background**

Plaintiff, Jesse Derrick Bond ("Plaintiff" or "Bond"), an inmate currently incarcerated at the State Correctional Institute ("SCI") in Graterford, Pennsylvania, filed this lawsuit pursuant to 42 U.S.C. § 1983. The dispute in this case centers around an encounter between Bond and Defendant Horne, a corrections officer, which occurred on August 23, 2010, while Bond was incarcerated at SCI-Greene.

This case commenced on October 24, 2011, with the filing by Bond of a Motion for Leave to Proceed *in forma pauperis*. Attached to the motion was a civil rights complaint which raised ten (10) counts: (i) Count I – deprivation of constitutional rights and privileges; (ii) Count II – Conspiracy to Deprive Persons of Equal Protection of the Laws; (iii) Count III – Infliction of Cruel and Unusual Punishment; (iv) Count IV – Retaliatory Treatment for Filing § 1983 and 1985 claims and filing grievances; (v) Count V – First and Eighth Amendments; (vi)

1

Count VI – Due Process of Law; (vii) Count VII – Harassment; (viii) Filing a False Report to the Detriment of Plaintiff; (ix) Count IX – Breach of Contract; and (x) Count X – Extortion. Defendants filed a Motion to Dismiss (ECF No. 24), to which Bond responded by filing an Amended Complaint (ECF No. 28). Bond raised the exact same ten Counts in his Amended Complaint and the factual allegations were an almost identical verbatim recitation of the allegations raised in the his original Complaint.

Defendants filed a second Motion to Dismiss arguing, *inter alia,* that Bond had not exhausted his administrative remedies (ECF No. 34). The Court agreed with Defendants and dismissed the claims raised in the Amended Complaint on exhaustion grounds. Bond filed an appeal to the United States Court of Appeals for the Third Circuit. The appellate court found that the administrative appeals process was not available to Bond, and vacated in part the judgment of the District Court insofar as it dismissed Bond's retaliation, due process, and state law claims. *See Bond v. Horne*, 553 F. App'x 219 (3d Cir. 2014). The appellate court dismissed all other claims.

    **C.**    **Factual Background**

In February of 2005, Plaintiff filed a lawsuit in this Court alleging that various officials and employees of the Department of Corrections had retaliated against him because of his use of the inmate grievance procedure. Summary judgment was granted on September 19, 2007, due to Bond's claims being barred either by a failure to properly exhaust administrative remedies or by the applicable statute of limitations. *See Bond v. Rhodes*, CA No. 05-241 (W.D.Pa.).

Bond states that in retaliation for that lawsuit, Defendant Horne, and three (3) other correctional officers, assaulted him on November 18, 2005. Bond filed a second lawsuit relating to this alleged assault. *See Bond v. FNU Rhodes*, CA No. 06-1515 (W.D.Pa). That case was

ultimately settled with Defendant Davis, an assistant to the Superintendent at SCI-Greene, acting as the liaison between Plaintiff and the attorney for the Defendants. According to Bond, a provision of the settlement agreement was that there would be an "immediate staff separation from C.O.1 Horne and sometime shortly thereafter a transfer to SCI-Graterford." (ECF No. 28-2, at p. 2).

Fifty-four days after signing the settlement agreement, the incident which gives rise to this lawsuit occurred. On August 20, 2010, Plaintiff remained at SCI-Greene despite assurances that he would be transferred to SCI-Graterford. On that day, Horne was on Bond's block passing out the Ramadan meal. Bond pressed the call button in his cell to speak with Defendant Jenkins, a sergeant at SCI-Greene. He wanted to inform Jenkins that he wanted nothing to do with Horne. According to Bond, Jenkins ignored him.

Horne placed food items (bread and a container of juice) on Bond's wicket, which Bond acknowledges that he knocked back towards Horne and the food tray. According to Horne, the container of juice hit him on his right hip. Shortly thereafter, Horne issued Bond a misconduct for the assault and listed on the misconduct as possible witnesses Defendants Jenkins, Basinger, and Kirk. (Misconduct Report A 571031; ECF No. 28-1, at p. 2.) Bond contends that this misconduct is false and was issued in retaliation for settling and "winning" his 2006 case in which he alleged that Horne and other correctional officers had assaulted him. *See* CA No. 06-1515. Bond informed Jenkins that he had not assaulted Horne and according to Bond, Jenkins told him that he knew that Bond had not assaulted Horne but one never knew what it would look like on the videotape.

After the misconduct was issued, but prior to his misconduct hearing, Bond sent a request to staff form to Defendant Davis informing Davis of the circumstances surrounding the

3

misconduct and asking that the misconduct be withdrawn. (ECF No. 28-2, at pps. 2-3.) Davis took no action on the request slip until after Bond had been found guilty of the misconduct. On August 27, 2010, T. Shawley for Defendant Davis, replied as follows: "As of 8/26/10 your case has been settled and this paperwork has been started." (ECF No. 28-2 at p. 2.)[1]

On August 25, 2010, Bond appeared before Hearing Examiner Freddi Nunez on the misconduct charge. Bond told Nunez that the misconduct was in retaliation for Bond having filed a lawsuit against Horne. Bond also wrote in his DC-141, Part II C Statement that, "[t]his misconduct report is a tick for tack form of retaliation by Defendant David Horne for the lawsuit that I filed against him in federal court . . . ." (ECF No. 28-3 at 2.) Nunez wrote in his Findings of Fact that Bond pled guilty to the assault charge,[2] that Nunez accepted the plea, and thereafter sanctioned him to 30 days Disciplinary Custody time, effective August 20, 2010.

Bond appealed his misconduct sentence. The finding of guilt was affirmed at the first level appeal by the Program Review Committee. Bond then filed his appeal paperwork with the Superintendent, Defendant Folino, but received no response, thereby preventing him from effectuating a final appeal to the Chief Hearing Examiner in Camp Hill.

Presently before the Court is Defendants' Motion for Summary Judgment, with Brief in Support (ECF Nos. 89 and 90) and Bond's Brief in opposition (ECF No. 100). Bond has filed his own Motion for Partial Summary Judgment with brief in support (ECF Nos. 93 and 96) and

---

[1] The Court docket in CA 06-1515 reflects that a Stipulation of Dismissal (ECF No. 204) was filed on August 26, 2010 and an Order of Dismissal was filed by the Court on August 31, 2010 (ECF No. 206). The summary judgment record reflects that the Settlement Agreement was signed by Bond on July 8, 2010. (ECF No. 28-2 at 2). A copy of the Settlement Agreement is not a part of the summary judgment record.

[2] Bond contests that he pled guilty to the assault charge; rather, according to Bond, while he acknowledged that he knocked the bread and juice container off the wicket, he never intended to assault Horne and did not plead guilty to the assault.

4

Supplemental Motion Partial Summary Judgment (ECF No. 108), to which Defendants have responded in opposition (ECF No. 112), Bond has filed a Reply (ECF Nos. 118 and 119), and Defendants' have filed a Sur-Reply (ECF No. 114). Neither party seeks summary judgment on all Counts. The issues have been fully briefed and the factual record has been thoroughly developed via the parties statements of material facts, appendices, and declarations (ECF Nos. 91, 92, 94, 95, 101, 104, 105, 110, 112, 113, and 120).

D.  **Standard of Review for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents ( i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia*

*v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). Importantly, however, in a case such as this one where there is a video recording of the incidents in question, the Court need not adopt the non-movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, mere allegations, without support, are insufficient. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

E. **Discussion and Analysis**

Bond's remaining claims are as follows: (i) Horne retaliated against him by issuing a false misconduct in violation of his First Amendment rights; (ii) Defendants' violated his due

process rights in the misconduct hearing process; and (ii) state law claims for breach of contract, harassment, filing false report, and extortion.[3]

1. *Retaliation Claim*

Bond alleges that Horne issued a false misconduct against him in retaliation for Bond filing a previous lawsuit in which Bond alleged that Horne had assaulted him. Defendants do not seek summary judgment on the retaliation claim against Horne. As to the remaining seven defendants, our court of appeals noted:

> Bond's retaliation claim does not directly implicate the personal involvement of six[4] of the seven other defendants, and therefore, was properly dismissed insofar as it named them as defendants. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir.1988) (stating that "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs," and that a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the requisite personal involvement). To the extent that Nunez was directly involved, Bond has not stated that Nunez possessed a retaliatory motive.

*Bond v. Horne*, 553 F. App'x at 223 at n. 2. Accordingly, it is recommended that Bond's retaliation claim proceed only against Defendant Horne.

Bond seeks summary judgment on his retaliation claim against Horne. However, the Court recommends that summary judgment be denied as genuine issues of material fact exist which preclude summary judgment. Bond admits that he pushed the bread and juice container off of his food aperture towards Horne. Horne contends that the juice container hit him whereas

---

[3] In Bond's Brief in Support of his Supplemental Motion for Partial Summary Judgment (ECF No. 109), for the first time he claims that his lawsuit also includes a claim for "promissory estoppel / detrimental reliance" against Defendant Davis. Not only does this argument lack evidentiary support, it is not properly before the Court. Plaintiff cannot raise this new issue at this late date, especially in light of discovery being closed.

[4] These six (6) defendants are: Lieutenant James Lipscomb; Sergeant Jenkins; CO Basinger; CO Kirk; Dan Davis, Assistant to the Superintendent; and Superintendent Louis Folino.

7

Bond says that it did not. Horne claims that this as an assault under prison rules whereas Bond states that it was not.

2. *Due Process*

The Due Process Clause offers procedural and substantive protections against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The threshold issue of due process analysis is whether a plaintiff has been deprived of one of these protected interests. In the instant action, Bond is asserting a liberty interest, namely, his interest in avoiding disciplinary custody.

Bond alleges that his procedural due process rights were violated when Horne filed a false misconduct against him and when Folino failed to hear Plaintiff's appeal from the guilty finding on the misconduct. He also contends that he was denied due process of law during his misconduct hearing due to procedural improprieties and a lack of evidence to support the charge of assault.

Plaintiff's contention that his due process rights were violated in the context of his misconduct hearings requires a determination of whether he had a protected liberty interest and, if so, what process was mandated to protect it. *See Sandin v. Conner*, 515 U.S. 471, 484 (1995); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Importantly, due process requirements apply only when the prison's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. "[T]he baseline for determining what is "atypical and significant" - the "ordinary incidents of prison life" - is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law. *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 486).

The United States Court of Appeals for the Third Circuit has held than an allegedly fraudulent misconduct report and related disciplinary sanctions lasting longer than thirty (30) days fell short of a due process violation. *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). The appellate court has also recognized, however, that "prison disciplinary proceedings <u>may</u> . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." *Bond v. Horne*, 553 F. App'x at 224 (emphasis added) (quoting *Smith*, 293 F.3d at 653).

  a. <u>Defendants Basinger, Kirk, Jenkins, Davis, and Folino</u>

The Court of Appeals held that none of the Defendants in this case, other than Horne, had personal involvement in Bond's retaliation claim. If a defendant was not involved in the allegedly retaliatory conduct, that defendant cannot be held liable for violating Plaintiff's due process rights based on that allegedly retaliatory act. Further, Defendants Basinger, Kirk, Jenkins, Davis, and Folino had no involvement in the misconduct hearing.[5] Therefore, it is recommended that summary judgment be granted to Defendants Basinger, Kirk, Jenkins, Davis, and Folino on Plaintiff's due process claim.

---

[5] To the extent, if any, that Bond is claiming an independent claim for the failure of Davis and Folino to respond to his request and grievance, such allegation is not sufficient to sustain a section 1983 claim. Prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them. *Pressley v. Beard,* 266 F. App'x 216 (3d Cir. 2008) (per curiam). Defendants' failure to respond to Bond's request and grievance appeal would only be relevant to an exhaustion analysis. The Court of Appeals has ruled that the administrative appeals process was not available to Bond; therefore, whether Bond fully exhausted his appeal is no longer an issue in this case.

b. <u>Defendant Nunez</u>

Bond contends that due to procedural improprieties, he was denied due process of law during his misconduct hearing. Additionally, Bond contends there was insufficient evidence to support a finding of guilt. Even if true, the Court finds that these allegations do not support a due-process claim against Nunez.

Hearing Examiners are protected by qualified immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 203-208 (1985). Therefore, hearing examiners are shielded from liability as long as their conduct did not violate any clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). The Court finds that the summary judgment record makes abundantly clear that Defendant Nunez is entitled to summary judgment.

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The United States has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (4) a decision that is "supported by some evidence in the record." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985) (citing *Wolff,* 418 U.S. at 563-67).

Bond clearly received advanced written notice of the charges against him and a written statement from Nunez regarding the basis for his decision. Moreover, Nunuz's decision was supported by at least a modicum of evidence, namely, the allegations of Horne's misconduct

report, as well as Bond's version of the events in which he admitted that he hit the bread pack and juice container with the back of his hand. *See* ECF No. 92-1. Accordingly, Bond was afforded all necessary process during his disciplinary hearing.

Furthermore, Bond was sanctioned to thirty (30) days disciplinary custody as a result of the misconduct. He does not allege any facts showing that the length of his confinement, or the conditions of his confinement, amounted to an "atypical and significant hardship" under *Sandin,* so as to deprive him of a protected liberty interest. "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more,[6] to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 642, 653 (3d Cir. 2002) (quoting *Sandin*). To determine if Plaintiff's placement was atypical, the Court considers two factors: (i) the amount of time the prisoner was placed into disciplinary segregation and (ii) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000). In the instant case, the Court finds that Plaintiff's thirty days of Disciplinary Custody in the Restricted Housing Unit does not rise to the level of being an atypical or significant hardship under *Sandin*. *See Smith,* 293 F.3d 641, 652(3d Cir. 2003) (7 months custody not atypical); *Griffin v. Vaughn,* 112 F.3d 703,706-07 (3d Cir. 1997) (finding that fifteen month period of administrative custody did not deprive prisoner of a liberty interest).

For all these reasons, the Court recommends that summary judgment be granted to Nunez on Bond's due process claim. Bond was not entitled to any due process protections with respect

---

[6] As noted *supra*, the Court of Appeals stated that Bond had not stated that Nunez possessed a retaliatory motive. Likewise, nothing in the summary judgment record evidence demonstrates that Nunez possessed a retaliatory motive.

the procedures employed during his disciplinary hearing. Having been deprived of no liberty interest, Bond was not constitutionally entitled to any process. Hence, whatever "flaws" occurred in the disciplinary hearing, if any, Plaintiff was not denied his procedural due process rights because he possessed no such rights given that the result of the process did not deprive him of a liberty interest.

        c.      <u>Defendant David Horne</u>

While Horne was involved in the alleged retaliatory act, as explained *supra,* Plaintiff's due process rights were not triggered. Further, Horne was not involved in the disciplinary hearing. Accordingly, it is recommended that summary judgment be granted to Horne on Bond's due process claim.

        3.      <u>Breach of Contract Claim</u>

The breach of contract claim alleges that the Settlement Agreement entered into in his 2006 federal case provided that Bond would receive an immediate staff separation from Horne and "sometime shortly thereafter" a transfer to SCI-Graterford. Defendants request that the breach of contract claim be dismissed because this Court lacks jurisdiction to adjudicate such a claim. .

When the rights sought to be enforced against the Commonwealth are created by a contract, the state Board of Claims retains exclusive jurisdiction over the action. *Nahouraii v. Indiana University of Pennsylvania*, 2015 WL 401422, *8 (W.D. Pa. Jan. 28, 2015); *Keenheel v. Com., Pennsylvania Sec., Comm'n,* 565 A.2d 1147, 1149 (Pa. 1989) ( "In order for the objectives of the Board of Claims to be fulfilled, however, a claim must be instituted against the Commonwealth seeking the enforcement of rights that were created by contract."). As the district court explained in *Seeney v. Kavistsky:*

> The Pennsylvania Legislature has waived state immunity to breach of contract claims, but only to a limited extent. In 72 Pa.S.A. §§ 4651–1 through 4651–10, the Legislature created the Board of Arbitration of Claims. The Board of Claims has exclusive jurisdiction over contract claims against the Commonwealth and its agencies. *United Brokers Mortgage Co. v. Fidelity Philadelphia Trust Co.,* 26 Pa.Commw. 260, 363 A.2d 817 (1976); *Kreider v. Commonwealth, Human Relations Commission,* 9 Pa.Commw. 491, 9 Pa.Cmwlth. 491, 308 A.2d 642 (1973). Therefore, this court does not have jurisdiction to hear plaintiff's breach of contract claim. Accordingly, that claim is dismissed.

*Nahouraii,* at *9 (quoting *Seeney v. Kavistsky,* 866 F. Supp. 206, 210 (E.D.Pa. 1994), *aff'd sub nom. Seeney v. Cmty. Action Agency of Delaware Cnty., Inc.,* 107 F.3d 8 (3d Cir. 1997)). Accordingly, the Pennsylvania Board of Claims has exclusive jurisdiction over this claim.

"There is one instance in which a court could potentially have jurisdiction over a settlement agreement between two parties when one of them is the Commonwealth of Pennsylvania. A motion to enforce a settlement agreement between the parties could, in some circumstances, be brought before this Court, but only if the parties, in reaching their settlement agreement, had specifically provided that this Court would retain ancillary jurisdiction to enforce that settlement agreement." *Nahouraii*, at *3-4. If such a term is included in a court's order, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381 1994). "If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so." 511 U.S. at 381. A "court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract ... *if the parties agree." Id.* at 381–82. (emphasis added). "Absent such action . . . enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

The Order of Dismissal filed on August 31, 2010 (ECF No. 206; CA 06-1515 (W.D.Pa)) contains no provision retaining jurisdiction. Accordingly, there is no such independent jurisdictional basis here.

For these reasons, the Court recommends that Bond's breach of contract claim be dismissed as exclusive jurisdiction rests with the Board of Claims.

4. Claims of Harassment, Filing False Report, and Extortion

The Pennsylvania General Assembly has reaffirmed by statute the sovereign immunity of the Commonwealth and its agencies and employees. *See Shoop v. Dauphin County,* 766 F. Supp. 1327, 1333–34 (M.D.Pa. 1991). That statute provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S .A. § 2310.[7] This immunity applies to Commonwealth employees in both their official and individual capacities, so long as the employees are "acting with the scope of their duties." *Maute v. Frank,* 657 A.2d 985, 986 (Pa. Super. 1995). Under Pennsylvania law, conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the job's authorized time and space limits; it is motivated, at least in part, by a desire to serve the employer; and if force was used by the employee against another, the use of force is not unexpected by the employer. *Mitchell v. Luckenbill,* 680 F. Supp.2d 672, 682

---

[7] To date, the General Assembly has waived sovereign immunity in only nine categories of cases, none of which apply in this case. Those nine exceptions involve: (1) vehicle liability; (2) medical professional liability; (3) care, custody or control of personal property; (4) a dangerous condition of Commonwealth real estate, highways and sidewalks; (5) potholes, sinkholes, or other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; 8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522(b).

(M.D.Pa. 2010); *Fitzgerald v. McCutcheon,* 410 A.2d 1270 (Pa. Super. 1979); *Natt v. Labar,* 543 A.2d 223, 225 (Pa. Cmwlth. 1988). Factors courts look at to determine whether or not sovereign immunity applies include whether the Commonwealth employee was on duty, in uniform, and performing job functions throughout the duration of the alleged offense. *Mitchell,* 680 F.Supp.2d at 683.

Here, it is clear that Plaintiff's state law claims of harassment, filing false report, and extortion do not fall within one of the nine exceptions to statutory sovereign immunity under Pennsylvania law. It is also clear that Defendants were on duty and performing job functions throughout the duration of the alleged offense(s). Therefore, it is recommended that Plaintiff's state law claims of harassment, filing false report, and extortion be dismissed.

## III. Conclusion

For the reasons stated above, it is respectfully submitted that Defendants' Motion for Summary Judgment be granted and that Plaintiff's Partial Motion for Summary Judgment be denied. The sole claim and defendant remaining for trial is Bond's claim of retaliation against Defendant Horne.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman,* 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: April 14, 2015                                s/Cynthia Reed Eddy
                                                     Cynthia Reed Eddy
                                                     United States Magistrate Judge

cc: JESSE DERRICK BOND
BZ-2493
Box 244
Graterford, PA 19426-0244
(via U.S. First Class Mail)


Robert A. Willig
Office of Attorney General
(via ECF electronic notification)